# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DRIT LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N16C-07-218 WCC CCLD |
| | ) | |
| GLAXO GROUP LIMITED | ) | |
| and HUMAN GENOME | ) | |
| SCIENCES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

Submitted:  September 6, 2022
Decided:  April 27, 2023

**Defendants' Renewed Motion to Dismiss Count III
of the Amended Complaint: GRANTED**

**MEMORANDUM OPINION**

Gregory P. Williams, Esquire, Chad M. Shandler, Esquire, and Nicole K. Pedi, Esquire, Richards, Layton, & Finger P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801.  Attorneys for Plaintiff.

Keith R. Hummel, Esquire, Karin A. DeMasi, Esquire, Adam I. Rich Esquire, Cravath, Swaine, & Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, NY 10019.  Attorneys for Plaintiff.

Philip A. Rovner, Esquire, and Jonathan A. Choa, Esquire, Potter Anderson & Corroon LLP, Hercules Plaza, P.O. Box 951, Wilmington, DE 19899.  Attorneys for Defendants.

Matthew M. Wolf, Esquire, John E. Nilsson, Esquire, Soumitra Deka, Esquire, Bridgette Boyd Esquire, Arnold & Porter Kaye Scholer LLP, 601 Massachusetts Ave., NW, Washington, DC 20001.  Attorneys for Defendants.

**CARPENTER, J.**

The Court here resolves Defendants Glaxo Group Limited ("GGL") and Human Genome Sciences, Inc.'s ("HGS") (together, "Defendants" or "GSK") Renewed Motion to Dismiss DRIT LP's ("DRIT" or "Plaintiff") Count III breach of contract claim. The Motion seeks to dismiss Count III under Civil Rule 12(b)(6). For the reasons discussed below, the Motion is **GRANTED** and DRIT's companion Motion for Partial Summary Judgment is **DENIED**.

## I.    FACTUAL & PROCEDURAL BACKGROUND

This litigation arises out of a Patent License and Settlement Agreement ("Settlement Agreement") entered into on October 28, 2008, as amended August 24, 2012, between GSK and non-party Biogen Idec MA Inc., ("Biogen").[1] The Settlement Agreement arose from a patent dispute between GSK and Biogen over the proper owner of inventions related to the use of antibodies for the treatment of lupus. The Settlement Agreement gave GSK ownership of inventions. It also obligated GSK to pay royalties to Biogen for the U.S. sales of the lupus drug Benlysta, and all Licensed Patents.[2] On December 6, 2011, the United States Patent and Trademark Office ("PTO") issued Patent No. 8,071,092 ("the '092 patent") from

---

[1] Compl. ¶ 1.
[2] *Id*. ¶ 3.

an application submitted by GSK.[3]  On August 24, 2012, DRIT purchased Biogen's

royalty rights under the Settlement Agreement.[4]

On April 27, 2015, Defendants filed a "statutory disclaimer" of the '092 patent

using the PTO's standard form for statutory disclaimers.[5]  Pursuant to  37 C.F.R. §

1.321(a)(4), the patent holder must pay a fee to the PTO to statutorily disclaim any

claim of a patent.[6]  GSK's patent attorney filled out a C.F.R. § 1.321(a) statutory

disclaimer form, and selected the fifth payment option, which states, "The Director

is hereby authorized to charge any fees which may be required or credit any

overpayment to Deposit Account No. [blank]."[7]  The PTO recorded the disclaimer

in the official prosecution history of the '092 Patent, dated April 27, 2015.  However,

the PTO never charged GSK's deposit account the $160 fee, and the receipt from

PTO sent to Defendant's counsel reflected that no payment had been made.  On July

16, 2015, GSK realized the error and remedied the PTO's omission by paying the

$160 fee.

DRIT filed its Complaint on July 28, 2016, alleging GSK breached the

Settlement Agreement as a result of their refusal to pay DRIT royalties and interest

---

[3] *Id.* ¶ 38.
[4] *Id.* ¶ 45.
[5] Defs.' Opening Br. in Support of their Renewed Mot. to Dismiss Count III of the Am. Compl. (hereinafter "Defs.' Br.") at p. 3.
[6] 37 C.F.R. § 1.321 (2013) sets forth the requirements for a disclaimer to be effective, including that it "[b]e accompanied by the fee set forth in § 1.20(d)."
[7] *Id.*  (citing Disclaimer in Patent Under 37 C.F.R. § 1.321(a), (Ex. A.)).

on U.S. sales of Benlysta since April 27, 2015.[8] It is Plaintiff's position that GSK's disclaimer was ineffective until July 16, 2015, thus, GSK's nonpayment of royalties from April 27, 2015, through July 16, 2015, was a breach of contract.[9] Sales of Benlysta between those dates totaled $68,939,000.[10] According to Defendants, their contractual royalty obligation ceased when they filed the statutory disclaimer on April 27, 2015.

On March 3, 2021, the Delaware Supreme Court upheld this Court's dismissal of the breach of contract claim but found that GSK had not breached the implied covenant of good faith and fair dealing as previously determined at trial. Therefore, the only remaining issue to be decided in this case is DRIT's Count III breach of contract claim subject to DRIT's Motion for Partial Summary Judgment and GSK's Motion to Dismiss. The parties stipulated to a single round of supplemental briefing,[11] and the Court subsequently held oral argument.[12]

## II.  STANDARD OF REVIEW

A party may move to dismiss under Rule 12(b)(6) for failure to state a claim on which relief can be granted.[13] In considering a Rule 12(b)(6) motion, the Court (1) accepts as true all well-pleaded factual allegations in the complaint; (2) credits

---

[8] Compl. D.I. 1 (July 28, 2016).
[9] DRIT's Ans. Br. in Opp'n to Defs.' Renewed Mot. to Dismiss. (hereinafter "Pl.'s Br.") at 2-3.
[10] *Id.*
[11] Letter from Defs., D.I. 378 (May 6, 2022).
[12] Judicial Action Form, D.I. 382 (Sept. 1, 2022).
[13] Super. Ct. Civ. R. 12(b)(6).

vague allegations if they give the opposing part notice of the claim; and (3) draws all reasonable factual inferences in favor of the non-movant.[14] Dismissal is inappropriate unless "under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[15]

DRIT's Count III breach of contract claim is determinative upon whether GSK's request to charge its deposit account as payment for the $160 disclaimer fee, was sufficient to complete the disclaimer filing even though PTO did not process any payment when the disclaimer was filed. In other words, whether additional action was required by GSK to satisfy the disclaimer when no payment had been processed by PTO.

## III. PARTIES' CONTENTIONS

The parties agree that GSK provided the PTO with authorization to charge their deposit account on April 27, 2015; however, the $160 fee was not paid until July 16, 2015, when GSK noticed that the PTO had not charged their account as requested. Subsequently, GSK paid the fee by check.

GSK argues DRIT's breach of contract claim should be dismissed as a matter of law because the effective date of GSK's disclaimer of the '092 patent is April 27,

---

[14] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).
[15] *Unbound Partners Ltd. P'ship v. Invoy Holdings Inc.*, 251 A.3d 1016, 1023 (Del. Super. 2021) (internal quotation marks omitted).

2015.[16] GSK asserts it did not breach the Settlement Agreement by ceasing royalty payments to DRIT after the April 27, 2015, effective date of GSK's disclaimer of the '092 patent.[17]

In support of its argument, GSK cites to 37 C.F.R. § 1.25(b), which states in part: ". . . post-issuance fees may be charged against these accounts if sufficient funds are on deposit to cover such fees."[18] Defendants allege the account it kept at the PTO was equivalent to having a debit card on file.[19] GSK says it followed the legal requirements for disclaimer by filling out the PTO's form and selecting the fifth payment option.[20] The fifth option authorizes the director to charge any fees which may be required to a deposit account.[21]

In response, DRIT argues the Defendants did not successfully disclaim their rights to the '092 patent until July 16, 2015, because statutory disclaimer is only effective with payment, which was not received by the PTO until July 16.[22] DRIT says GSK, not the PTO, made the mistake, and the fee was not properly paid. DRIT further alleges that because the disclaimer was not effective until July 16, 2015, the

---

[16] *Id.*
[17] *Id.*
[18] 37 C.F.R. § 1.25(b) (2021).
[19] Mot. Tr. at 7. Sept. 1, 2022.
[20] The PTO's 37 C.F.R. § 1.321(a) statutory disclaimer form provides five (5) options for payment of the disclaimer fee set forth in 37 C.F.R. § 1.20(d), including check, credit card, or by authorization to charge a deposit account.
[21] Defs.' Br. Ex. 1-3.
[22] *Id.* at 5-6.

'092 patent was still in effect and GSK was earning royalties until the fee was paid on July 16, 2015.

## IV. DISCUSSION

### (a) Disclaimer Procedure

Under the Patent Act, "[a] patentee may, on payment of the fee required by law, make disclaimer of any complete claim, stating therein the extent of his interest in such patent."[23] "Such disclaimer shall be in writing, and recorded in the Patent and Trademark Office; and it shall thereafter be considered as part of the original patent to the extent of the interest possessed by the disclaimant and by those claiming under him."[24]

The Code of Federal Regulations also states that a patentee may disclaim any claims in a patent, and for the disclaimer to become effective and recorded in the PTO, (1) it must be signed by the patentee, (2) identify the patent and complete claim(s), (3) state the present extent of the patentee's ownership, and (4) be accompanied by the fee set forth in § 1.20(d).[25] The PTO form used to file a disclaimer lists five ways to pay the required fee, three of which are applicable to this situation. They are by check, by credit card, or by charging the fee to a Deposit

---

[23] 35 U.S.C. § 253(a).
[24] *Id.*
[25] 37 C.F.R. § 1.321 (2013). *See* 37 C.F.R. § 1.20 (2020), which states the filing fee for each statutory disclaimer under § 1.321 is $170.00. At the time of the disclaimer the fee was $160.00.

Account that has been established at PTO.  There is no dispute that GSK properly completed the disclaimer form and checked the box on the form that authorized the fee to be paid from an established account at PTO.  There is also no dispute that the Deposit Account had sufficient funds to cover the $160 fee.

### (b)    Deposit Account Authorization

37 C.F.R. § 1.25 sets forth regulations governing PTO deposit accounts. Subsection (b) specifically indicates that post-issuance fees may be charged using these accounts and as long as there are sufficient funds in the account to cover the fee, payment will be considered effective on the date the authorization is filed.[26]  In spite of the clear language of § 1.25(b), DRIT argues that a deposit account cannot be used to pay for a disclaimer.  It asserts that a complete reading of subsection (b) reflects that it is limited to general authorizations of fees, which was not utilized by GSK, or fees associated with Section 1.16 through Section 1.18 of the CFR regulation.[27]

GSK responds to this argument by explaining that the general authorization language relates to patent applications that are pending approval and does not modify the post-issuance language contained in the first sentence of subsection (b).[28]  GSK further asserts that it did not rely on a "general authorization," but instead, made a

---

[26] 37 C.F.R. § 1.25(b) (2021).
[27] Pl.'s Br. at 6-7.
[28] Defs.' Br. at 3.

8

specific request on PTO's own statutory disclaimer form.[29]  This form explicitly authorizes the PTO to charge the statutory disclaimer fee to the patentee's account.[30]

The Court finds that DRIT is misconstruing the language of 37 CFR § 1.25(b). While the second sentence of § 1.25(b) does specifically reference §§ 1.16 through 1.18, there is nothing to suggest that this language limits application of subsection (b)  to only those provisions.  The Court finds that the use of deposit accounts for fees associated with post-issuance applications is clearly authorized by this section. This is further evidenced by its inclusion on the PTO's own disclaimer form.  While the argument is a clever attempt by DRIT to find support for its position, it simply is not supported by a fair reading of the 37 C.F.R. § 1.25.

### (c)    Fee Transmittal Form

DRIT next argues that while GSK filed the disclaimer form on April 27, 2015, they failed to file the Electronic Patent Application Fee Transmittal form which they argue is a required accompanying document to complete the disclaimer process. They assert that since this form was not provided to PTO, the deposit account was not charged, nor was any payment received to finalize the disclaimer until July 16, 2015, when the error was noticed and corrected.

First, the Court agrees that GSK's experienced patent counsel failed to include

---

[29] *Id.*
[30] *Id.  See* Ex. 2.

the Electronic Patent Application Fee Transmittal form with the Disclaimer Form. As best as the Court can surmise, the transmittal document is a standard form of PTO, and its purpose is to electronically document the payment of the fee. It includes only basic information about the patent and a fee code for the action that is being taken by the patent holder. To compound the problem, GSK's patent counsel failed to notice that the subsequent electronic receipt received by him in which PTO acknowledged receiving the disclaimer form indicated that the necessary fee had not been provided. These are mistakes that should not have occurred and have provided an avenue for DRIT to now assert that they are entitled to an additional several months of royalties worth millions of dollars. So, the key question for the Court to decide is whether the Application Fee Transmittal form is required to be filed to effectuate the disclaimer.

Clearly the form facilitates the payment process, but the question is whether there is a regulation, manual section, or code provision that mandates its use. From the evidence presented to the Court and questions by the Court of counsel during oral argument, the answer appears to be no. The Court has not been provided any reason or explanation for the PTO's failure to charge the $160 from the deposit account, and the Court is unwilling to find that the failure to file the transmittal form was the cause particularly when no fee was actually transmitted. Here, all that was

10

required was to debit the Deposit Account that was in place and funded at PTO.[31] As a result, the Court can only find that the disclaimer form filed on April 27, 2015, authorized that the fee be charged to GSK's deposit account was sufficient to effectuate the disclaimer and the patent was disclaimed as of that date.

## V.    CONCLUSION

This Court finds the disclaimer was appropriately filed on April 27, 2015, and not July 16, 2015, pursuant to C.F.R. Title 37 section 1.321. The plain reading of the statutes permits a patentee to charge its PTO deposit account as payment for the $160 disclaimer fee given sufficient funds are on deposit to cover such fees. For the foregoing reasons, Defendants' Renewed Motion to Dismiss Count III of the Amended Complaint is hereby **GRANTED** and DRIT's Motion for Summary Judgment is **DENIED.**


**IT IS SO ORDERED.**


      /s/ William C. Carpenter, Jr.
      Judge William C. Carpenter, Jr.

---

[31] *President & Fellows of Harvard Coll. v. Lee*, 589 Fed. Appx. 982 (Fed. Cir. 2014).

11